CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

9/12/2025

LAURA A. AUSTIN, CLERK
BY:  s/ CARMEN AMOS
DEPUTY CLERK

### IN THE UNITED STATES DISTRCIT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 6:24-CR-00026 |
| v. | MEMORANDUM OPINION & ORDER |
| MICHAEL PAYNE, | JUDGE NORMAN K. MOON |
| *Defendant.* | |

Defendant Michael Payne moves to suppress all physical and testimonial evidence obtained from an allegedly invalid search warrant. Dkt. 41 at 1, Ex. E. Because the search warrant's curtilage term authorizes a much broader search than the officers intended, the Court finds the search warrant invalid for lack of particularity. However, because the officers intended to search 1716 Spencer Place, and acted with objective reasonableness, the Court will apply the good faith exception to the exclusionary rule. As such, Payne's motion to suppress is denied.

### LEGAL STANDARD

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. To comply with this requirement, search warrants issued by law enforcement must be supported with probable cause and must describe the authorized search with sufficient particularity. *See Marron v. United States*, 275 U.S. 192, 196 (1925) ("The requirement that warrants shall particularly describe the things to be seized makes general searches under them impossible and

Case 6:24-cr-00026-NKM    Document 78    Filed 09/12/25    Page 2 of 8    Pageid#: 197

prevents the seizure of one thing under a warrant describing another."). According to the Fourth Circuit, a warrant is sufficiently particularized if the executing officer can conduct a "carefully tailored" rather than a "wide ranging exploratory search." *See United States v. Cobb*, 970 F.3d 319, 326 (4th Cir. 2020).

As a remedy for Fourth Amendment violations, courts utilize the exclusionary rule, which dictates that "evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure." *United States v. Calandra*, 414 U.S. 338, 347-48 (1974). This rule suppresses both officer testimony about knowledge gained during an unconstitutional search and indirectly obtained evidence, such as later in time testimony stemming from an unlawful search. *See Silverman v. United States*, 365 U.S. 505, 511-12 (1961); *Wong Sun v. United States*, 371 U.S. 471, 485-88 (1963) ("[V]erbal evidence which derives so immediately from an unlawful entry and an unauthorized arrest as the officers' action in the present case is no less the 'fruit' of official illegality than the more common tangible fruits of the unwarranted intrusion.").

However, the exclusionary rule does not automatically apply to Fourth Amendment violations. Courts do not suppress "evidence obtained as a result of nonculpable, innocent police conduct." *Davis v. United States*, 564 U.S. 229, 240 (2011). This is known as the "good faith exception," which turns on whether the warrant and law enforcement officers were "objectively reasonable." *See United States v. Leon*, 468 U.S. 897, 923-34 (1984). In these circumstances, the exclusionary rule is "appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Id.* at 926.

2

FACTUAL BACKGROUND

Payne moves to suppress evidence obtained during the search of 1716 Spencer Place, Lynchburg, Virginia, 24504. Dkt. 41. Payne's motion argues that the warrant's property description is not sufficiently particularized and renders the warrant invalid. *Id.*

Two properties are at the heart of this motion to suppress. 1716 Spencer Place ("1716") is a 560-square foot rental property. Dkt. 41 at 1. It is listed on Zillow.com for a price of $86,400, though it is not currently for sale or for rent. *Id.* at Ex. C. It is not listed on the city of Lynchburg's parcel viewer website. *Id.* at Exs. B & C. Google Maps lists 1716 as a residence. *Id.* at Exhibit A. 1716 has a separate mailing address. *Id.* at Ex. D.

1714 Spencer Place ("1714") is also a 560-square foot rental property. It is listed on Zillow.com for a price of $117,600, and it is also not currently for sale or rent. Unlike 1716, it is listed on the city's parcel viewer, as a "residential detached single family" property. Dkt. 41 at Ex. B. It is listed as being owned by Jesse Scott. *Id.* Google Maps also lists 1714 as a residence. The relevant search warrant involves both residences.

When beginning their investigation as to Payne, law enforcement "sent a confidential informant to 1716 to buy drugs." Dkt. 59-1 at 5. The confidential informant later told officers "Mike Payne and Timothy Paige were the main cocaine suppliers at [1716]." Dkt. 41 at 2. Law enforcement then "conducted a Lynchburg City GIS search of 1716 Spencer Place and did not locate a valid address." Dkt. 59-1 at 6. The officers thus concluded that 1716 was part of the legal parcel 1714 Spencer Place, which did turn up on the GIS search. Since controlled buys had taken place, the officers knew there were two separate, distinct residences on the lot. Dkt. 41 at 2.

On April 2, 2024, Detective J. Howard asked the Lynchburg Circuit Court to issue a search warrant for:

-1714 Spencer Place Lynchburg, Va 24504. This property has a structure that is described as a single family ,single (sic) level dwelling with white siding, green trim around windows and doors with the numbers "1716" affixed to the left of the front door. This residence is to the right of "1714."

-The curtilage of 1714 Spencer Place around the structure labeled as "1716."

-All persons present

Dkt. 41, Ex. F.

During the search on April 3, 2024, officers went to 1714 Spencer Place and found two residences—one marked with the house number 1714, and one marked with the house number 1716. Dkt. 41. Officers only entered the 1716 residence, and while inside, "seized controlled substances, firearms, ammunition, drug paraphernalia, money, and cellular phones."[1] *Id.* at 2. Law enforcement found two men in the home, neither of whom were Payne. *Id.* Payne was arrested at a different address and, during his interview, "admitted to selling cocaine from the address searched by law enforcement and admitted knowing there were firearms located there." Dkt. 59 at 3. Officers did not search the 1714 residence. *Id.* at 3.

Payne faces a four-count indictment for: (i) conspiracy to distribute and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 846, 841(a)(1) & (b)(1)(C); (ii) possession with intent to distribute controlled substances in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(C); (iii) possession of firearms in furtherance of drug trafficking and use of firearms

---

[1]     According to the Government, "151 grams of cocaine, multiple digital scales, and five firearms: a Ruger LCR revolver, .38 special, a Rock Island Armory 1911 handgun, a Bersa BP40cc .40 caliber handgun, a Taurus G2C 9mm handgun, and an Anderson AM-15 Short Barreled Rifle" were seized during the search. Dkt. 59 at 3.

during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c), and (iv)

possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g). Dkt. 5 at 1-2.

<u>ANALYSIS</u>

### A. The Warrant is Not Sufficiently Particularized to Meet the Requirements of the Fourth Amendment

A search warrant is sufficiently particularized if the executing officer will be able to

conduct a "carefully tailored" search rather than a "wide ranging exploratory search." *Cobb*, 970

F.3d at 326. The warrant in this case describes the following parcel:

> -1714 Spencer Place Lynchburg, Va 24504. This property has a structure that is
> described as a single family ,single (sic) level dwelling with white siding, green
> trim around windows and doors with the numbers "1716" affixed to the left of the
> front door. This residence is to the right of "1714."
>
> -The curtilage of 1714 Spencer Place around the structure labeled as "1716."
>
> -All persons present
>
> Dkt. 41, Ex. F.

Payne argues that the warrant's property description is overbroad in its description and

that "it is not clear if the officers are supposed to search the 1714 address, the 1716 address, or

both." Dkt. 41 at 6. Using a "commonsense and realistic" read of the warrant's terms, the Court

disagrees. *United States v. Blackney*, 949 F.3d 851, 862 (4th Cir. 2020). The warrant describes

one residence to be searched—"1714 Spencer Place" which contains a "single family ,single

(sic) level dwelling with white siding, green trim around windows and doors with the numbers

'1716' affixed to the left of the front door. This residence is to the right of '1714.'" Dkt. 59-1 at

1. Even though two residences sit on the 1714 Spencer Place parcel, the Court does not agree

that this description could be read as supporting a search of the 1714 residence. The warrant's

affidavit further supports this, as section four establishes 1716 Spencer Place as the "target residence" and provides analysis about controlled buys that occurred at this location. Dkt. 59-1 at 5. The affidavit is completely silent about the 1714 residence. As such, the warrant's particularity does not fail because of the property description.

The second term, "the curtilage of 1714 Spencer Place around the structure labeled '1716,'" however, causes the warrant's particularity to fail. Dkt. 59-1 at 1. Curtilage is often defined as "the area immediately surrounding a dwelling house." *United States v. Dunn*, 480 U.S. 294, 301 (1987). When considering whether a portion of property is curtilage, courts often analyze "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, a nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by it." *Id.*

The Government argues this term narrowly authorizes "the search of the building labeled '1716' and that building's curtilage." Dkt. 59 at 9. The Court disagrees. Since 1714 Spencer Place is considered to be both the land and a residence, the curtilage term indicates that the entire lot can be searched—a far wider parcel that the "area immediately surrounding" the 1716 residence. *Dunn*, 480 U.S. at 301. This confusing, overly broad term prevents an executing officer from conducting a "carefully tailored" search and thus causes the warrant to fail the Fourth Amendment's particularity requirement. *Cobb*, 970 F.3d at 326. As such, the warrant is invalid for lack of particularity.

### B.  Despite the Warrant's Flaws, the Good Faith Exception to the Exclusionary Rule Applies

As the warrant is insufficiently particularized and thus invalid, the Court next considers the appropriate remedy. Unless an exception applies, courts typically suppress evidence obtained

in violation of the Fourth Amendment. *United States v. Stephens*, 764 F.3d 327, 335 (4th Cir.
2014). The Government argues that the good faith exception applies in this case, as "officers
reasonably believed the warrant granted authorization to search the '1716' building . . . in the
affidavit . . . all of the facts relate to the '1716' building." Dkt. 59 at 10. The Government argues
that "any confusion in the search warrant" is due to law enforcement's good faith efforts to "use
the proper legal description of the parcel where the building labeled '1716' sat." *Id.* Payne's
briefing is silent as to the good faith exception. During oral argument, Defense counsel argued
the good faith exception should not apply as law enforcement's extended surveillance of the
property should have led to a particularized warrant, meaning law enforcement was not
"objectively reasonable" in the warrant's drafting and subsequent search.

The Court disagrees. When drafting the warrant, law enforcement had significant
probable cause regarding drug activity in 1716 from both a confidential informant and controlled
buys. Dkt. 59-1 at 5-8. The affidavit to the warrant described 1716 as the "target residence." *Id.*
The law enforcement officers executing the search only entered the 1716 residence, even though
the warrant authorized a significantly broader search. Dkt. 59-2. The officers only searched what
was reasonable. As such, they did not act unreasonably, recklessly, or dishonestly while
searching 1716. Therefore, the good faith exception to the Fourth Amendment applies, and the
exclusionary rule does not suppress the evidence discovered during the April 3, 2025 search or to
Payne's later admissions regarding his role in the illegal activities occurring at the 1716
residence.

<u>C</u>ONCLUSION

Because of the above analysis, the Court **DENIES** Defendant's motion to suppress.

It is so **ORDERED.**

7

The Clerk of Court is directed to send this Memorandum Opinion and Order to all counsel of record.

Entered this 12th day of September, 2025.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE